## WELLS *et al.* v. GUARANTY STATE BANK.

### No. 5109. Opinion Filed March 28, 1916.

### (156 Pac. 896.)

1. **BILLS AND NOTES—Actions—Direction of Verdict.** Record examined, and the action of the trial court in directing a verdict upon the notes in favor of the bank to the extent of its interest is approved.

2. **FRAUDULENT CONVEYANCES—Remedies of Creditors—Attachment.** Where property is conveyed with intent to defraud, the same may be treated as a nullity, and the property may be attached the same as if no conveyance had been made.

3. **ATTACHMENT—Claims by Third Persons—Burden of Proof.** The burden of proof is generally upon the purchaser who bought of defendant before the levy when he intervenes to claim the property or institutes an independent action therefor, but, if the attaching creditor alleges or admits the purchase by the intervener and charges fraud, he has the burden.

(Syllabus by Hooker, C.)

*Error from District Court, Muskogee County;*
*R. P. de Graffenried, Judge.*

Action by the Guaranty State Bank against R. B. Wells and another. Judgment for plaintiff, and defendants bring error. Affirmed in part, and in part reversed, and cause remanded.

*J. J. Bruce* and *H. T. Walker,* for plaintiffs in error.

*W. B. Moore,* for defendant in error.

Opinion by HOOKER, C. On the 6th day of November, 1912, the bank filed its action in the district court of Muskogee county to recover a judgment against R. B. Wells upon two promissory notes of date February 13, 1912, due in 6 and 12 months thereafter, for the sum of $200 each, and Carrie T. Wells was made a party to said

suit, and it was asserted that R. B. Wells conveyed certain property to her in fraud of his creditors, and at the same time it procured an attachment to issue against the property of the defendant R. B. Wells, and in order to procure said attachment it filed the proper affidavit. The defendant Carrie T. Wells did not sign said notes, nor was she liable for the obligation sued upon, but in her answer she denied the allegations of the plaintiff's petition and the attachment affidavit, and claimed that at no time did the said R. B. Wells have any interest in said real estate. The defendant R. B. Wells likewise filed an answer to said action which is substantially the same as the answer of his codefendant, and the answers of both of said defendants assert that the transaction btween them was in good faith and in no wise hindered or delayed the creditors of said R. B. Wells in the collection of their debts.

The proof discloses that a few days after the execution and delivery of these notes sued upon here the said notes were assigned by the payee to the bank for a valuable consideration without any notice whatever of any equities or defenses existing between Wells, the maker, and Harrison, the payee of said notes; that said notes were assigned to the bank as collateral security for a debt of $200 for money loaned by it to Harrison at the time; and at the conclusion of the evidence in this cause the court directed a verdict in favor of the bank and against the defendant R. B. Wells upon said notes to the extent of the liability of Harrison to the bank. This is claimed by the plaintiffs in error to have been erroneous. With this contention we cannot agree, as it is clearly evident that the bank was an innocent purchaser of the notes in question and as such was entitled to a judgment thereon to the

extent of its interest, and the court properly ordered the jury to return a verdict accordingly.

It is next asserted that it was error for the court to sustain the attachment in this action in favor of the bank and against the defendant R. B. Wells, for the reason that the bank had no judgment nor execution lien upon said property, and was not entitled to attach the same where the evidence disclosed that the property had been conveyed to the third party before the institution of the suit. The rule as laid down by modern decisions is to the effect:

That, "inasmuch as a conveyance of property with intent to defraud one's creditors may be treated as a nullity by them, it follows that property which has been thus conveyed may be attached as the property of the grantor by his creditors the same as if no conveyance had been made."

See 4 Cyc. 562, and note thereto cited.

Also in 20 Cyc. p. 656, it is said:

"A conveyance of property by a debtor made with intent to defraud his creditors, to one participating in the fraudulent intent, is declared by statute both in this country and in England and by the decisions of the courts as either void or voidable as to creditors, and they may generally pursue legal process against the subject of the conveyance as though the title to the property were not embarrassed by the fraudulent conveyance. The title, for the purpose of enabling creditors to enforce their debts against the property conveyed, still remains in the grantor just as though the conveyance had not been made. A direct action to set aside the conveyance is not required." See notes on page 656.

See, also, *Taylor v. Lander,* 61 Kan. 588, 60 Pac. 320, and *Lander v. Pollard,* 5 Kan. App. 621, 46 Pac. 975.

Section 1174, Rev. Laws 1910, provides that:

"Every conveyance of real estate or any interest therein, and every mortgage or other instrument in any way affecting the same, made without a fair and valuable consideration or made in bad faith, or for the purpose of hindering, delaying or defrauding creditors, shall be void as against all persons to whom the maker is at the time indebted or under any legal liability."

From a careful review of the authorities, we are of the opinion that the bank was entitled to maintain this action and to procure an attachment to issue and to be levied upon this property, although the same had been conveyed prior thereto to the wife of the defendant, where it alleged that said conveyance was with the intention to hinder and delay the creditors of said defendant, and alleged a state of facts which, if true, made said conveyance void within the provisions of the statute above quoted.

This court, in the case of *Wimberly v. Winstock et al.*, 46 Okla. 645, 149 Pac. 238, held:

"While the parties to the conveyance are related by blood or marriage, that does not, of itself, establish fraud for such transfer, but such fact of relationship may be considered in connection with other evidence, tending to impeach the transaction; and in such cases, especially if between * * * members of the same household, the transaction will be given much closer scrutiny than if between strangers.

"In such cases it is often impossible to prove actual fraud and collusion between the parties to the conveyance, * * * by direct and positive evidence; and the attacking party is often compelled, through the inherent necessities of the situation, to rely upon presumptive evidence, growing out of the *indicia* and badges of fraud, developed by the circumstances attending the transaction, and the range of inquiry therefore in such cases must

necessarily be very extensive, and bring within its scope all the circumstances bearing upon the question."

Yet this court has not held that in an action in law these facts establish a *prima facie* case of fraud, or that the burden in a case where the conveyance was admitted by the attaching creditor shifted to the grantee to establish that the transaction was free from fraud.

In the instant case it must be borne in mind that the bank alleged in its petition that the property attached had been conveyed before the institution of this suit to the grantee, Carrie T. Wells, and made her a party defendant, and the trial court instructed the jury that the attachment issued in this case was levied on certain land as being the property of R. B. Wells, and that Carrie T. Wells had intervened in this action and filed an answer and cross-petition wherein she alleged and claimed that she was the owner of all the property in this action, and instructed that the burden of proof was upon her to prove to the jury's satisfaction by a preponderance of the evidence that she was the owner of this property at the time of the issuing and levying of the attachment of the property herein. This instruction was duly excepted to by the defendants, and called to the attention of the trial court in their motion for new trial, and is assigned as error in this court. After a mature consideration on account of the clear conflict in the evidence, we are of the opinion that this instruction placed upon Carrie T. Wells a burden which should not have been imposed upon her.

In Waples on Attachment, sec. 849, we find the following:

"The burden of proof is generally upon the purchaser who bought of defendant before the levy when he intervenes to claim the property. If the attaching creditor admits the purchase by the intervener, but charges fraud, he has the burden"—citing *Morgan v. Wood,* 38 Mo. App. 255; *Stephens v. Oppenheimer,* 45 Ark. 492; *Lahitte v. Frere,* 42 La. Ann. 864, 8 South. 598.

It is the policy of law to presume that all people act in absolute good faith, and that transactions are free from fraud, and, where a conveyance is attacked as fraudulent, the party who alleges such must prove it.

In 4 Cyc. p. 743, the rule is laid down as follows:

"Where a party interpleads or institutes an independent action claiming a right in the property superior to that of the attaching creditor, the burden is, as a rule, upon him to establish the validity of his claim. By statute, however, if claimant is in possession at the time of the levy, the burden has been placed upon the attaching party; and in some states the statutes impose upon the attaching creditor the duty of introducing evidence showing *prima facie* ownership in the debtor and that it was subject to levy, whereupon the burden of proof shifts to claimant to establish his claim. If, however, the transfer of the property to the interpleader is admitted, and fraud is alleged to avoid such conveyance, the burden of proof is upon the party so alleging."

See *Reinecke v. Gruner,* 111 Iowa, 731, 82 N. W. 900; *M. T. I. Co. v. Ritchie,* 143 Mo. 587, 45 S. W. 634; *Ellis v. Valentine,* 65 Tex. 532.

The rehearing asked in this cause is granted, and the former opinion withdrawn, and the money judgment in favor of the bank against R. B. Wells is affirmed, but as to the attachment the same is reversed and remanded.

By the Court: It is so ordered.